IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAMIAN LIBUTTI,

    Plaintiff,

v.   No. 13cv01104 WJ/SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment, filed June 20, 2014 **(Doc. No. 26)** and Memorandum in support thereof, filed June 20, 2014 **(Doc. No. 27)**. Having considered the parties' briefs and the applicable law, the Court finds that Defendant's is well-taken and, therefore, is GRANTED.

### Background

This action arises under the New Mexico Declaratory Judgment Act, NMSA 1978 §§ 44-6-1 through 15. On Saturday, April 25, 2009, around 2:00a.m., Plaintiff was shot in the back by an unknown individual in an unidentified vehicle. At the time of the shooting, Plaintiff was a passenger in Robert Listek's automobile. Plaintiff settled his uninsured motorist/underinsured motorist ("UM/UIM") claim with Mr. Listek's insurance carrier for its policy limits. Plaintiff also settled his UM/UMI claim with Defendant for a policy issued in his name for his 2001 Chevrolet Corvette. Plaintiff now seeks, through his Complaint, additional insurance benefits from insurance policies issued by State Farm to family members of Plaintiff. Although Plaintiff originally sought coverage under all of the various policies issued to his relatives, it appears that

Plaintiff is now only asserting claims under his mother's policies. Defendant is seeking summary judgment on the basis that Plaintiff was not covered under his mother's policies, because Plaintiff was neither a named insured nor an additional insured under those policies. Plaintiff agrees that he is not a named insured, but argues that he was an additional insured under his mother's policies because he was a "resident relative." The sole dispute in this matter is whether Plaintiff was a resident relative as defined by the various policies issued to Plaintiff's mother.

## Undisputed Material Facts[1]

At the time of Plaintiff's injury on April 25th, Plaintiff was a named insured on one policy insuring his 2001 Chevrolet Corvette that was issued by Defendant. The parties have already reached an agreement concerning this policy. At the time of the shooting, Plaintiff's mother, Elsa Villegas, was the first named insured on five State Farm policies. Plaintiff was not a named insured on any of the policies issued to his mother. In order to be a beneficiary of insurance benefits from his mother's policies, Plaintiff has to show that he was a "resident relative" of his mother. Under the various policies, "resident relative" is defined as "a person, other than you [the named insured], who resides primarily with the first person shown as a named insured on the Declarations page." The policies do not further elaborate on the term "resides primarily."

Between January 2009 and March 1, 2009, Plaintiff resided at the Colfax residence with his mother, his daughter, and his girlfriend. On January 21, 2009, Plaintiff signed a purchase agreement for the Monahiti residence. On February 27, 2009, Plaintiff closed on the purchase of the Monahiti residence and executed an Affidavit of Occupancy, which stated in relevant part:

> The [Monahiti] property is or will be Borrowers' [Plaintiff's] Primary Residence.
> This means at least one of the Borrowers who executes the Note and Dead of

---

[1] These facts were set forth in the briefs are supported by references to the record. Further, the Court notes that parties largely did not dispute the facts themselves, but rather the legal ramifications of those facts.

> Trust or Mortgage will take title to and occupy the Property. The Property is now occupied as the borrowers' principal residence or will be occupied as Borrowers' principal Residence no later that [(sic)] sixty (60) days after this date or sixty (60) days after the Property shall first become ready for occupancy as a habitable dwelling, whichever is later and shall continue to occupy the property as Borrower's Principal residence for at least one year after the date of occupancy. The Borrowers have no present intention that is contrary to this representation.

See (**Doc. No. 27-1**), Affidavit of Occupancy, Exhibit E to Defendant's Motion.

On February 27, 2009, Defendant issued Plaintiff a homeowner's policy for the Monahiti residence. On March 4, 2009, Plaintiff requested that Defendant change the residence address on his auto policy for his 2001 Chevrolet Corvette to the Monahiti residence.

Sometime around March 1, 2009, Plaintiff moved at least some of his belongings into the Monahiti residence and began staying overnight at the Monahiti residence. See (**Doc. No. 27**), p. 4 (citing various exhibits). However, at the time of the shooting, a number of Plaintiff's belongings were still at the Colfax residence including clothes, furniture, and his 1993 Chevrolet Corvette. Plaintiff's daughter also continued to have a room with all of her clothes and belongings at the Colfax residence. Plaintiff began paying utilities at the Monahiti residence sometime around March 1, 2009. Near the end of March or the beginning of April 2009, Plaintiff changed his mailing address from the Colfax Residence to the Monahiti Residence.[2] Plaintiff still had the Colfax address listed on a number of documents including: his April 30, 2009 pay stub, his information for his creditors, his driver's license, the joint checking account he shared with his mother, and his healthcare flex spending account.

Plaintiff's mother testified that as of the time of the injury in April 2009, Plaintiff "was already into his own house" although he was still "in the process of taking stuff back and forth." See (**Doc. No. 27-1**), Deposition of Elsa Villegas, p. 19, l. 25- p. 20, l. 9. Plaintiff himself

---

[2] Defendant did not specify in what context Plaintiff changed his mailing address to the Monahiti address, but Plaintiff did not dispute this fact.

testified that at the time of the injury, he was "primarily staying at the Monahiti house." See **(Doc. No. 27-1)**, Deposition of Damian Libutti, p. 28, l. 7- p. 29, l. 10.  Plaintiff defined "primarily" as staying at the Monahiti house "more often than not." See id. Prior to April 25, 2009, Plaintiff often ate dinner at the Colfax residence[3] and occasionally spent the night at the Colfax residence because he was still in the process of moving to the Monahiti Residence.

When Ms. Villegas initially applied for automobile insurance through State Farm in 2004, she informed State Farm that Plaintiff was a driver and lived with her at the Colfax residence.  At no time did Ms. Villegas inform State Farm that Plaintiff no longer lived with her at the Colfax residence.  Ms. Villegas never received a refund of any premium amounts which would reflect a reduction in coverage nor did her premium amounts change after March 2009.

On Friday night, April 24, 2009, Robert Listek picked Plaintiff up from his Monahiti residence for a "night out on the town" at several bars in downtown Albuquerque.  Sometime around 2:00 am on Saturday, April 25, 2009, Plaintiff was injured while riding as a passenger in Robert Listek's automobile during a drive-by shooting.   The police report regarding the shooting states that the Monahiti residence is Plaintiff's home address.  Additionally, during State Farm's initial interview of Plaintiff in July 2009, Plaintiff listed his home address at the Monahiti residence. At the time of Plaintiff's injury, Robert Listek was driving Plaintiff to Plaintiff's "home" at his Monahiti residence.

## Discussion

### I. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to

---

[3] In his Response, Plaintiff asserts that he ate dinner every night at the Colfax residence prior to April 24, 2009. However, the portion of his mother's deposition testimony that Plaintiff cites to in support of this contention actually states, "Q: where was he having his meals?; A: at my house; Q: at your house; A: A lot of times." See **(Doc. No. 27-1)**, Deposition of Elsa Villegas, p. 20, ll. 10-13.

interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Id.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252.

**II.     Plaintiff was not a Resident Relative at the time of the Injury**

Whether an individual is covered by an UM/UIM endorsement in an auto policy "presents a question of law."  Rehders v. Allstate Ins. Co., 2006-NMCA-058, ¶15, 139 N.M. 536, 135 P.3d 237.  In this case, whether or not Plaintiff was a class one insured is a significant issue.  A class one insured is a person who is named on an insurance policy, as well as any relatives living in the household with that person, whereas a "class two" insured pertains to persons occupying an insured motor vehicle at the time of an accident.  See Morro v. Farmers Ins. Grp., 1988-NMSC-006,¶5, 106 N.M. 669, 671, 748 P.2d 512, 514.  Class one insureds "may stack all [UM/UMI] policies purchased by the named insured", but class two insureds" are restricted to recovering under the policy on the car in which they rode."  See id.  As it is undisputed that Plaintiff was not individually named on his mothers' policies, the question in this case is whether Plaintiff may be considered a "resident relative" on any of the other policies, and therefore a class one insured who is entitled to stacking.  See Gamboa v. Allstate Ins. Co., 1986-

NMSC-078,-,] 6, 104 N.M. 756, 757, 726 P.2d 1386, 1387 (stating that "[s]tacking refers to an insured's attempted recovery of damages by aggregating the coverage under more than one policy or under one policy covering more than one automobile."). New Mexico has developed a strong policy favoring stacking for class one insureds and "[t]his Court has consistently refused to enforce exclusions that attempt to limit uninsured motorist coverage to particular circumstances." Loya v. State Farm Mut. Ins. Co., 119 N.M. 1, 6, 888 P.2d 447, 452 (1994). "Insurance policy clauses that prohibit stacking are particularly repugnant to public policy when the injured insured has paid separate premiums for underinsured/uninsured motorist coverage on each vehicle." Jimenez v. Foundation Reserve Insurance Co., Inc., 107 N.M. 322, 324, 757 P.2d 792, 794 (1988). The underlying rationale is that if the damages an insured has suffered have exceeded the policy limits, the insured has a reasonable expectation of coverage under the policies she has purchased for her benefit. See id.

Therefore, this case turns on whether Plaintiff "primarily resided" with his mother. "The words 'residence' and 'resident' have no fixed meaning applicable to all cases, but are used in different and various senses, depending upon the subject-matter." Perez v. Health & Soc. Servs., 1977-NMCA-140, 91 N.M. 334, 336, 573 P.2d 689, 691. However, New Mexico courts have provided some guidance on these terms. A "residence" is the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house. Perez, 91 N.M. at 336-37, 573 P.2d at 691-92. "The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside." Risk Mgmt. Div., Gen. Servs. Dep't of State ex rel. Apodaca v.

Farmers Ins. Co. of Arizona, 2003-NMCA-095, 134 N.M. 188, 191, 75 P.3d 404, 407 (citation omitted).  In various contexts, New Mexico courts have determined whether a person is a resident based upon the intent of the person and that person's physical presence at the location claimed to be a residence.  See id. ("We hold that to determine whether [a foster child] was a resident under the [Plaintiffs'] homeowner's insurance policy, the district court should consider 1) the intent of the parties to the insurance contract and 2) the nature of the child's stay in the foster home."); Perez, 91 N.M. at 336, 573 P.2d at 691 (in determining whether a party was a resident eligible for benefits, focusing on the person's intent and physical presence); Hagan v. Hardwick, 1981-NMSC-002, 95 N.M. 517, 518, 624 P.2d 26, 27 (determining residence in the context of a divorce proceeding and focusing on intent and physical presence).

   Here, it was clear that Plaintiff intended to move out of the Colfax residence and live at the Monahiti residence.  He signed an Affidavit of Occupancy averring that he intended to make the Monahiti residence his primary residence and to remain there for at least one year.  His mother's and his own testimony confirm that he had already moved some of his belongings to the Monahiti residence. Further, while Plaintiff does set forth certain items that had not yet been moved to his new home, Plaintiff was staying at the Monahiti residence "more often than not" and had begun the process of changing his mailing address on a number of different accounts.  In fact, Plaintiff himself stated that he resided primarily at the Monahiti residence at the time of the injury.  Even in his Response, Plaintiff admits that he only "occasionally" stayed at the Colfax residence after he began the process of moving to the Monahiti residence.  See **(Doc. No. 30)**, p. 7. Plaintiff had begun staying at the Monahiti residence, paying utilities, and announced his intention to live there prior to the shooting.  The Court cannot hold that Plaintiff was still "residing primarily" with his mother simply because Plaintiff had not moved all of his

belongings out of his mother's home or because he had not changed his mailing address on every single document. Plaintiff cites no law for the proposition that leaving a few items at a relative's house once beginning the process of moving constitutes residency at the relative's house. To the contrary, New Mexico case law emphasizes future intention to stay at a location in order to establish residency. In this case, it is clear that Plaintiff was already physically present at the Monahiti residence and intended to stay there in the future, with no intention of returning to reside at his mother's home. Therefore Plaintiff was not a resident relative at the time of the injury.

### III.     Plaintiff is not a Class One Insured

Plaintiff argues in the alternative that even if he was not a "resident relative" at the time of the injury, the Court should look to his status at the time of the formation of the contract. Plaintiff relies on Loya v. State Farm Mut. Ins. Co., 1994-NMSC-122, 119 N.M. 1, 888 P.2d 447 for the proposition that whether or not a person is a Class one insured is determined at the time of the contract, not at the time of the injury. In Loya, the New Mexico Supreme Court consolidated two cases in which the insurance company had denied UM/UIM coverage because an additional insured was not living with the named insured at the time of the accident. See id., at 119 N.M. 2.

The first case dealt with a married couple who purchased an automobile insurance policy together. Id. Because only one person could be listed as the primary insured, the wife's name was listed first, but the husband's name was specifically added to the declarations page. See id, 3. ("The policies defined the 'named insured' as the 'first person named in the declarations' regardless of whether both spouses were named in the declarations as insureds. The policies provided class-one coverage for 'the first person named in the declarations' and 'his or her

spouse.'"). The policy defined "spouse" as a husband or wife of the named insured and also included the requirement that the spouse live with the named insured. See id. (In a separate section of the policies (on a different page) the definition of 'spouse' was limited to "your husband or wife while living with you."). At the time of the accident in question, the husband and wife were separated and the husband was not living with the wife at the address listed on the policy. See id. The New Mexico Supreme Court held that the husband was a Class one insured in spite of the fact that he was not living with the wife at the time of the injury. The Court observed, "[t]he uncontroverted evidence shows that at the time [the wife] purchased the policy, [the husband] met the policy definition of insured spouse, the couple paid a premium for coverage for both spouses, they purchased the policy with community property, and the parties intended to provide class-one coverage for the couple and their son." Id., 2. The Court went on to state, "[w]hen a married couple contracts for insurance coverage for the family, there is a presumption that the coverage applies with equal effect to both parties unless one of them is expressly excluded from coverage." Id., 3.

In the second case, the New Mexico Supreme Court considered the denial of coverage under the father's insurance policy where the minor child was not living with the father. Again, the New Mexico Supreme Court rejected the insurance company's argument that the child was not covered because at the time of the incident the child was not living with the father. The Court first noted "[the child] was dependent upon [the father] for support and that [the father] was a joint legal custodian for [the son]." Id., 2. "We hold that an insurance company may not exclude from uninsured motorist coverage an unemancipated minor child that the named insured is legally obligated to financially support by inserting a general definition applicable to other relatives in the policy." Id.

Contrary to Plaintiff's assertion, the Loya holding is a narrow one. When discussing both cases, the New Mexico Supreme Court focused heavily on the particular facts of the case. See e.g. id., 4 (relying on cases that were "founded upon the principle that a husband and wife each have contractual rights in an insurance policy that, once established and paid for, may not be invalidated because of the language the insurance company chooses to use to describe the parties."); id, 8 (noting the father was "legally obligated and liable for his son's medical bills whether [the son] lives with his mother or with him or at a boarding school."); see also Hartford Ins. Co. v. Cline, 2006-NMSC-033, ¶12, 140 N.M. 16, 21, 139 P.3d 176, 181 (noting that the "the legal responsibility within the relationship between the named insured and the relative informed our decision [in Loya] that denying coverage was against public policy."). Further, the Loya Court specifically cautioned against construing its holding too broadly noting, "[g]iven the fact that most individuals are not legally responsible financially for relatives other than their [minor] children or spouses and therefore do not normally intend to provide uninsured motorist coverage for those relatives, it is not necessarily against public policy for an insurance policy to preclude coverage to those other kinds of relatives not living with a named insured." Loya, at 9. The Loya court was careful to limit its holding to the facts of the cases presented, a husband and wife couple and a father and his minor son.

Here, the facts are distinguishable from Loya. This is not a situation where husband and wife bought a policy jointly and through a technicality were not able to list both as the primary insured. Nor is this an instance of a minor child where the parent would legally and financially responsible for the child's injuries. Plaintiff is an adult, independently employed, and a homeowner. His mother is no longer legally or financially responsible for him. Another distinguishing factor from Loya is that Plaintiff was never named on any of his mother's

10

insurance policies.  Plaintiff alleges that he "enjoyed several years of class one status on [his mother's policies] prior to purchasing the Monahiti residence."  Plaintiff's argument ignores the fact that he was a class one prior to purchasing the Monahiti residence by virtue of being a resident relative, rather than because he was explicitly named on the policies.  While Plaintiff asserts that his mother disclosed to Defendant that Plaintiff was a household driver for the Colfax residence, Plaintiff never stated that he was expressly listed on any policy's Declaration's page.

Plaintiff also asserts that Defendant established the amount of his mother's premiums based upon the number of persons she wanted insured by that contract and further asserts that his mother paid premiums for UM coverage that covered two household drivers, instead of only one.  Plaintiff provides no citation to the record in support of these allegations.[4]  Moreover, Defendant submitted an affidavit which states that Ms. Villegas' UM coverage was not based upon the number of household drivers; thus Ms. Villegas did not specifically pay to have Plaintiff insured.  See **(Doc. No. 32)**, Affidavit of Nelson Husser, p. 1.  Thus, unlike the cases cited by Plaintiff, his mother did not specifically pay for him to be on the policy, and there is no special relationship such as the ones discussed in Loya.  Plaintiff happened to be a class one insured at the time that his mother purchased the policies based upon the fact that he was resident relative, not because he was named on any policy.  Finally, Plaintiff has produced no evidence that his mother specifically paid for him to be covered under her policies, which is additional evidence that Plaintiff was not a class one insured under his mother's policies at the time Plaintiff was shot.

**THEREFORE, IT IS ORDERED,** that Defendant's Motion for Summary Judgment,

---

[4] Ms. Villegas testified that she did not receive a refund from Defendant after Plaintiff moved out nor did her premium amounts change after Plaintiff moved out.  However, this does not establish that Ms. Villegas' insurance premiums were based upon two household drivers rather than one household driver; Ms. Villegas could have just as easily always been charged for one driver so the change in the amount of household drivers should have had no impact on her rates.  Thus, Plaintiff's contention is not supported.  The Court notes it would have been a fairly simple matter for Plaintiff to provide documentation proving that Ms. Villegas was charged an additional amount based upon Plaintiff's status as a household driver, and his failure to do so is revealing.

filed June 20, 2014 **(Doc. No. 26)** is **GRANTED** and all claims set forth in Plaintiff's Complaint are dismissed with prejudice. The Court shall enter a separate judgment consistent with this opinion.

 

_____
UNITED STATES DISTRICT JUDGE